IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

UNITED STATES,

v.

NEVAHN JEFFERSON                    Criminal Action No. 3:25-cr-133

      Defendant.

## MEMORANDUM OPINION

This matter comes before the Court on MR. JEFFERSON'S MOTION
TO DISMISS THE INDICTMENT (ECF No. 16) (the "MOTION"); the
Government's Response in Opposition to Defendant's Motion to
Dismiss the Indictment (ECF No. 17) (the "Response"); and MR.
JEFFERSON'S REPLY TO THE GOVERNMENT'S RESPONSE TO HIS MOTION TO
DISMISS THE INDICTMENT (ECF No. 18) (the "REPLY"). For the reasons
set forth below, the MOTION will be DENIED.

## FACTUAL BACKGROUND

On August 19, 2025, the Grand Jury returned an indictment
charging Nevahn Jefferson with one count of Possession of a
Machinegun in violation of 18 U.S.C. § 922(o) and 26 U.S.C.
§ 5845(b). ECF No. 3. It is alleged that, on or about February 27,
2025, Jefferson possessed a Glock 19, 9mm, with a Glock conversion
device that changes the weapon from a pistol to a machinegun. Id.
On October 9, 2025, Defendant filed the MOTION, seeking dismissal

1

of the only count against him because 18 U.S.C. § 922(o) is unconstitutional on its face and as applied to him. ECF No. 16, 1.

## STANDARD OF REVIEW

Challenging a statute on its face is the "'most difficult challenge to mount successfully' because it requires a defendant to 'establish that no set of circumstances exists under which the Act would be valid.'" United States v. Rahimi, 602 U.S. 680, 693 (2024) (citing United States v. Salerno, 481 U.S. 739, 745 (1987)). In other words, the Government must show only one circumstance in which the statute is Constitutional to survive the facial challenge. Id. Therefore, if the Government establishes that the statute is Constitutional as to Jefferson, it is not unconstitutional, either facially or as applied.

## ANALYSIS

The Second Amendment provides that "[a] well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. amend. II. In District of Columbia v. Heller, the Supreme Court set out a new test for determining whether a particular statute violated the Second Amendment. 554 U.S. 570 (2008). Lower federal courts interpreted Heller to lay out a two-step analytical framework. New York State Rifle & Pistol Ass'n, Inc. v. Bruen, 597 U.S. 1, 17 (2022) ("Bruen"). But, in Bruen, the Supreme Court held that the analytical framework used by lower courts following Heller

2

was incorrect. Id.  The Supreme Court then explained the correct analytical framework as follows:

> In keeping with Heller, we hold that when the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. To justify its regulation, the government may not simply posit that the regulation promotes an important interest. Rather, the government must demonstrate that the regulation is consistent with this Nation's historical tradition of firearm regulation.

Id. (emphasis added). In sum, the Supreme Court set out a two-step framework for analyzing Second Amendment challenges such as those presented by Jefferson. First, look to the plain text of the Second Amendment. Second, if the plain text allows the conduct, look to historical firearm regulation.

## I. The Plain Text

At the first step, the Court looks at the plain text of the Second Amendment to determine whether the conduct is presumptively protected. Bruen, 597 U.S. at 17. The Fourth Circuit held, in United States v. Price, that, at the first step of the Bruen analysis, three questions must be resolved: "(1) whether the petitioners were 'part of the people whom the Second Amendment protects'; (2) whether the weapons regulated by the challenged regulation were 'in common use' for a lawful purpose, in that case, 'self-defense'; and (3) whether the Second Amendment protected the petitioners' 'proposed course of conduct.'" 111 F.4th 392, 400 (4th Cir. 2024) (citing Bruen, 597 U.S. at 31-32).

There is no contention that Jefferson is not a person protected by the statute. The key issue is question two, in this case, whether machine guns are in common use for a lawful purpose. _Id._ Jefferson alleges that his lawful purpose is self-defense. ECF No. 16, 6. Under _Price_, a court can use tools such as precedent, statistics, and common-sense reasoning to determine whether a weapon is reasonably possessed for a lawful purpose. _Price,_ 111 F.4th at 403-406. Common-sense reasoning can rely on factors such as lethality. _Id._

First, precedent. "We know from Supreme Court precedent that short-barreled shotguns and machineguns are not in common use for a lawful purpose." _Price,_ 111 F.4th at 403 (citing _Heller_, 554 U.S. at 629). Heller did not **hold** that machine guns were not in common use for a lawful purpose, but the majority opinion did state that it would be "startling" for a ban on machine guns to be unconstitutional. _Heller_, 554 U.S. at 624. That statement is _dicta_, but we are instructed that "great weight" should be given to Supreme Court _dicta_. _Hengle v. Treppa_, 19 F.4th 324, 347 (4th Cir. 2021) (citing _Fusaro v. Cogan_, 930 F.3d 241, 254 (4th Cir. 2019)) _Heller_ and _Price_ permit the conclusion that machine guns are not in common use for a lawful purpose. Further analysis confirms that conclusion.

That is borne out by the common-sense reasoning respecting the lethality of machine guns and statistics about their use.

4

Common sense dictates that weapons which inflict significant damage disproportionate to their use in personal protection. Bianchi v. Brown, 111 F.4th 438, 451 (4th Cir. 2024) ("What brings all the weapons beyond the scope of the Second Amendment together . . . is their ability to inflict damage on a scale or in a manner disproportionate to the end of personal protection.") (emphasis added). Machine guns, by definition, can deliver a substantial number of bullets in a short time and thus can inflict significant damage "disproportionate to the end of personal protection." Id.; 26 U.S.C. § 5845(b); United States v. Henry, 688 F.3d 637, 640 (9th Cir. 2012) ("modern machine gun[s] can fire more than 1,000 rounds per minute") (internal citation omitted). There is no personal protection need to fire a significant number of rounds in a short time. Bianchi, 111 F.4th at 459 (citing Ocean State Tactical, LLC v. Rhode Island, 95 F.4th 38, 45 (1st Cir. 2024); Nat'l Ass'n for Gun Rights v. Lamont, 685 F. Supp. 3d 63, 96-97 (D. Ct. 2023)).

Next, the analysis looks to statistics about the use of machine guns in self-defense. Jefferson argues that, in 2015, there were approximately 500,000 legally registered machine guns in the United States (ECF No. 16, 8; ECF No. 16-1), and by 2020, there were more than 726,000 legally registered machine guns. Id. (citation omitted). This, says Jefferson, shows that machine guns are in common use, comparing the 726,000 number to the number of

weapons owned in other cases where the type of weapon was found to be in common use. Id. (citing Caetano v. Massachusetts, 577 U.S. 411, 420 (2016) (Alito, J., concurring) (hundreds of thousands of tasers and stun guns sold to citizens); Maloney v. Singas, 351 F. Supp. 3d 222, 237-38 (E.D.N.Y 2018) (64,890 nunchaku sold between 1995 and 2018); Avitabile v. Beach, 368 F. Supp. 3d 404, 411-12 (N.D.N.Y. 2019) (300,000 tasers owned by private citizens)). However, the comparison to Caetano, Maloney, and Avitabile fail for two reasons.

First, common sense dictates that nunchaku and tasers are significantly more likely used in self-defense than a machine gun. Neither can cause mass injury or mass death rapidly. Second, Jefferson has not shown what part of the 726,000 reside in the hands of the populus versus in possession of the government, law enforcement, or dealers of weapons to the government or law enforcement. United States v. Fisher, CRIMINAL CASE NO. 1:23-cr-00045, 2024 WL 589115, at *2 (W.D.N.C. Feb. 13, 2024). According to current ATF statistics, there are a maximum of 234,718 machine guns in private hands, including some collectible machine guns which do not fire bullets. And the government owns some machine guns of this type as well. ECF No. 17, 10. It cannot be said, therefore, that there are even 234,718 machine guns used for self-defense. Although that is not an insignificant number of weapons,

6

it is a small fraction of the nearly 400 million total firearms nationwide. <u>Bruen</u>, 597 U.S. at 73 (Alito, J., concurring).

Nor does the sheer commonality of a particular weapon necessarily mean that it is commonly held for a lawful purpose. Machine guns are not common, nor are they common for a lawful purpose such as self-defense. The Government cites two studies that consider what kind of firearms are used in self-defense cases. ECF No. 17, 11. Both studies omitted mention of machine guns, only giving use percentages for handguns, shotguns, and rifles. <u>Id.</u> Those statistics underscore the common sense proposition that machine guns are not in common use for lawful purposes.

At this point, the Court could cease its analysis, finding that under the plain text and history of the Second Amendment, machine guns are not protected. Indeed, that is what the Fourth Circuit did in an unpublished opinion. <u>United States v. Taylor</u>, No. 24-4392, 2025 WL 2784820 (4th Cir. Sept. 30, 2025).

There is, however, some dispute over the analytical framework. Jefferson argues that at the first step of the <u>Bruen</u> analysis, the Court may consider only the definition of the word "arms." ECF No. 16, 9-10. In <u>Heller</u>, the Supreme Court held that the Second Amendment "extends, prima facie, to all instruments that constitute bearable arms, even those that were not in existence at the time of the founding." 554 U.S. at 582. That ends the first step of the analysis according to Jefferson, and Section

922(o) should be considered presumptively unconstitutional. ECF No. 16, 6-7. The Sixth Circuit agreed with Jefferson's view on the analytical framework, but the Fourth Circuit has squarely rejected such a narrow inquiry in performing the first step of a Bruen analysis. Compare Price, 111 F.4th at 398 with United States v. Bridges, 150 F.4th 517 (6th Cir. 2025) (considering common use at step two of the Bruen analysis). Jefferson seems to recognize this, citing a concurring opinion in Price to support his view of the analytical framework. ECF No. 16, 9-10 (citing Price, 111 F.4th at 415 (Quattlebaum, J., concurring)) However, it is the majority opinion that controls the analysis here. Price, 111 F.4th 392.

Because machine guns are not commonly used for lawful purposes, they do not fall within the protection of the Second Amendment. Therefore, both as applied and facially, Jefferson's challenge fails.

CONCLUSION

For the foregoing reasons, MR. JEFFERSON'S MOTION TO DISMISS THE INDICTMENT (ECF No. 16) will be denied.

It is so ordered.

/s/ _Rep_
_____
Robert E. Payne
Senior United States District Judge

Richmond, Virginia
Date: November 14, 2025

8